IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| PHILIP BROWN, | CV 22–140–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | |
| Defendant. | |

Plaintiff Philip Brown brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("SSA"). The Court will reverse and remand the Commissioner's decision because the Court finds that the Administrative Law Judge ("ALJ") erred in determining that Plaintiff was not disabled within the meaning of the SSA.

## BACKGROUND

Plaintiff filed an application for disability benefits under Title II on or about October 17, 2016. (Doc. 8 at 149, 299.) Plaintiff initially alleged a disability onset date of July 1, 2015, but later amended the onset date to September 15, 2016. (*Id.* at 55–57, 149, 320.) Plaintiff's date of last insured for Title II benefits is June 30, 2019; thus, Plaintiff is required to establish disability on or before that date in order

1

to be entitled to a period of disability and disability insurance benefits.  (*Id.* at

149); *see also* 42 U.S.C. §§ 416(i), 423(d).

Plaintiff's disability claim is based on impairments related to staphlococcus,

septic arthritis in his left shoulder, osteomyelitis in his thoracic spine, abscess

epidural space in his cervical spine and resulting acute incomplete quadriplegia,

empyema in his pleural space, hard palate abscess in his mouth, and bilateral

shoulder and lumbar spine pain.  (Doc. 8 at 338, 367–74.)  Plaintiff's claims were

denied initially on October 9, 2019, and upon reconsideration on May 29, 2018.

(*Id.* at 146, 149, 176.)  Following a hearing, an ALJ denied Plaintiff's claims on

May 6, 2021.  (*Id.* at 13–33.)  On April 11, 2022, the Appeals Council denied

Plaintiff's request for review, thereby rendering the ALJ's decision the final

decision of the Commissioner.  (*Id.* at 7–12.)

## LEGAL STANDARDS

### I.    Standard of Review

42 U.S.C. § 405(g) allows limited judicial review of Social Security benefit

determinations after the Commissioner, following a hearing, has entered a final

decision.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.

2014).  The Court may set aside the Commissioner's decision "only if it is not

supported by substantial evidence or is based on legal error."  *Id*. (quoting *Andrews*

*v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U. S. 197, 229 (1938)). If the ALJ's decision is supported by such evidence and the ALJ applied the correct legal standards, the Court must affirm the Commissioner's adoption of that decision. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. Thus, "[w]here evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will not reverse an ALJ's decision for errors that are harmless. *Id.*

## II.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) they suffer from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A).

In determining whether a claimant qualifies as disabled under the Social Security Act, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the claimant bears the burden of establishing disability. *Burch*, 400 F.3d at 679. If they meet this burden, the burden of proof shifts to the Commissioner in step five. *Id.*

In step one of the evaluation, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is, then they are not disabled under the meaning of the Social Security Act. *Id.* If they are not, the ALJ proceeds to the second step in the evaluation.

In step two, the ALJ determines whether the claimant has any impairments—singly or in combination—that qualify as severe under the applicable regulations and have lasted or are expected to last at least twelve (12) months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments qualifies as severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant does not have a severe impairment, the claimant is not disabled within the meaning of the Social Security Act. *Id.* If the claimant has a severe impairment, the ALJ proceeds to the third step.

In step three, the ALJ compares the claimant's impairments to the listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is disabled.  *Id.*  If the claimant's impairments do not, the ALJ proceeds to step four.  If the evaluation continues beyond step three, the ALJ must assess the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's residual functional capacity is the most that the claimant can still do in a work setting despite the physical and mental limitations caused by their impairments and any related symptoms.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In step four, the ALJ determines whether the claimant retains the RFC to perform their past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If they do, the claimant is not disabled.  *Id.*  If their RFC does not permit them to engage in past relevant work, the ALJ proceeds to step five.

In step five, the ALJ determines whether, considering the claimant's RFC, age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner bears the burden to prove this and can do so through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20

C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 15, 2016, through his date last insured of June 30, 2019.  (Doc. 8 at 18.)

At step two, the ALJ determined that, through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease; cervical ankylosis and kyphosis, with post-surgical infection; and obesity.  (*Id.*)  The ALJ determined these impairments significantly limit Plaintiff's ability to perform basic work functions.  (*Id.* at 19.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with the following exceptions:

> [t]he claimant can sit or stand one hour at a time and needs to change positions for a 1-2 minute period before returning to the original position.  The claimant can only occasionally climb ramps or stairs. The claimant can never climb ladders, ropes, and scaffolds.  The

claimant can frequently balance, stoop, kneel, and crouch. The claimant can only occasionally crawl. The claimant can frequently handle and finger. The claimant can only occasionally reach overhead. The claimant must avoid uneven surfaces, unprotected heights, and dangerous machinery. Finally, the claimant needs to avoid concentrated exposure to extreme cold and to vibrations.

(*Id.* at 19–20.)

At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform past relevant work as a roughneck, miner, sawmill worker, logger, landscape laborer, or ranch hand. (*Id.* at 24–25.) Proceeding to step five, the ALJ found, "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (*Id.* at 25.) These jobs are charge account clerk (20,500 jobs), final assembler (16,000 jobs), and callout operator (14,000 jobs). (*Id.* at 26.) Accordingly, the ALJ found Plaintiff "was not under a disability . . . at any time from September 15, 2016, the amended alleged onset date, through June 30, 2019, the date last insured." (*Id.*)

Plaintiff asserts that the ALJ erred in three respects: (1) by improperly assessing and rejecting Plaintiff's hearing testimony and the third-party written testimony; (2) by improperly assessing and rejecting the opinions of Plaintiff's examining and treating medical sources; and (3) by issuing an incomplete finding regarding Plaintiff's residual functional capacity. (Doc. 10 at 6–7.)

I.      **The ALJ properly assessed and rejected Plaintiff's hearing testimony and the third-party written testimony.**

Plaintiff argues that the ALJ erred in discounting his testimony as to the existence and severity of his symptoms without providing specific, clear, and convincing reasons for doing so.  (*Id.* at 7–20.)  Plaintiff also argues that, "contrary to the ALJ's characterization . . . , [his] medical treatment records consistently document the myriad of symptoms from his initial hospitalization and surgeries in 2016 through the date of his second hearing."  (*Id.* at 12.)  In particular, Plaintiff takes issue with the ALJ's failure to address several records from February to December 2017 from various treatment providers.  (*Id.* at 13–18.)

Where, as here, an ALJ finds that a Plaintiff has provided objective medical evidence of an impairment which might reasonable produce pain or other alleged symptoms, "the ALJ may 'reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492–93 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  An ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).  The ALJ must not mischaracterize, misattribute, or selectively review statements or opinions made in the evidence.  *See Holohan v. Massanari*,

246 F.3d 1195, 1205 (9th Cir. 2001); *Regennitter v. Commr. Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

The ALJ met this standard.  The ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with evidence in the record."  (Doc. 8 at 20.)  To support this finding, the ALJ provided a detailed explanation with numerous citations to objective medical findings and Plaintiff's own testimony concerning his treatment, rehabilitation, physical condition, and activities following the alleged onset date. (*Id.* at 20–22.)  The ALJ's decision also demonstrates that the ALJ properly considered the entire record before reaching a conclusion.

"[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."  *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).  The ALJ discussed how Plaintiff's demonstrated improvement in the first few months after his initial injury undermined his allegations that he suffered greater limitations for more than twelve months.  (Doc. 8 at 21.)  The ALJ noted that Plaintiff regained the ability to walk without an assistive device after only a few months of rehabilitation.  (*Id.*)  Less than twelve months from the date of the injury, Plaintiff's "consultative examination showed he had good range of motion in all joints, his strength was 4/5, he had good reflexes, and he demonstrated normal motor function in the lower extremities."  (*Id.*)  The ALJ noted that "the

remaining record shows, or fails to support, further limitations, which lasted for 12

months or more." (*Id.*)

The ALJ also discussed how Plaintiff's own testimony contradicted his

claims, pointing out that Plaintiff "testified that he lives independently, although

his mother helps with grocery shopping and cleaning." (*Id.*)  Finally,  the ALJ

noted that Plaintiff had "provided no additional evidence showing limitations from

2017 through claimant's date last insured in 2019." (*Id.*)  The ALJ also considered

Plaintiff's obesity and its impact on his ability to function. (*Id.* at 21–22.)

Ultimately, the ALJ concluded that Plaintiff's symptoms were less serious than

alleged, but "serious enough that [he] can perform a range of only sedentary

work." (*Id.* at 21.)

Next, Plaintiff argues that the ALJ erred by improperly discounting lay-

witness testimony, specifically the written testimony of Plaintiff's mother, Penny

McDonald.  (Doc. 10 at 19.)  A failure to address lay testimony may be deemed

harmless where, as here, it is "inconsequential to the ultimate non[-]disability

determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th

Cir. 2008) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th

Cir. 2006)); *see also Molina v. Astrue*, 674 F.3d 1104, 1119 (9th Cir. 2012)

*superseded on other grounds by regulation as stated in Bowen v. Kijakazi*, No. 21-

35600, 2022 U.S. App. LEXIS 18907, 2022 WL 2610242, at *2 (9th Cir. July 8,

2022).  Because the lay testimony was duplicative of Plaintiff's own testimony, and the ALJ properly discounted Plaintiff's testimony, any failure to address the lay testimony was harmless.  *See Molina*, 674 F. 3d at 1117–22 (noting that the failure to address the lay witness testimony may be deemed harmless "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony").

Accordingly, the Court holds that the ALJ properly assessed and rejected Plaintiff's hearing testimony and the third-party written testimony.

## II.   The ALJ partially erred in assessing and rejecting the opinions of Plaintiff's examining and treating medical sources.

Plaintiff argues that the ALJ erred in discounting the opinions of his consultative examiner, Dr. Jenko, and physical therapist, Kimberly Grover, and by failing to address statements made by treating physician, Dr. Krass.  (Doc. 10 at 21.)

"The ALJ is responsible for resolving conflicts in the medical record," including contradictory opinions of treating or examining sources.  *Carmickle*, 533 F.3d at 1164.  The ALJ may only reject the opinion of a treating or examining source by providing "specific and legitimate reasons that are supported by

substantial evidence in the record."[1] *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Plaintiff contends that the ALJ improperly dismissed the entirety of Dr. Jenko's opinion on the basis that it addressed an issue reserved to the Commissioner.  (Doc. 10 at 22.)  Plaintiff also contends that it was improper for the ALJ to dismiss Dr. Jenko's opinion based on its recency to the onset date of Plaintiff's disability.  (*Id.* at 23.)

Whether a claimant is "disabled"—within the context of social security benefits—is an ultimate issue that is reserved to the determination of the Commissioner.  20 C.F.R. § 404.1527(d)(1).  Thus, an ALJ is not bound by a medical source's opinion as to whether a claimant is "disabled."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an  impairment or the ultimate determination of disability.").  Nonetheless, an ALJ must provide specific and

---

[1] Because Plaintiff filed his claim before March 27, 2017, the ALJ's analysis of medical opinions is governed by 20 C.F.R. § 404.1527 and the Ninth Circuit's "specific and legitimate" standard.

legitimate reasons, supported by substantial evidence, for discounting a medical
source's opinion on disability. *Reddick*, 157 F.3d at 725 ("In disability benefits
cases such as this, physicians may render medical, clinical opinions, or they may
render opinions on the ultimate issue of disability - the claimant's ability to
perform work. . . . A treating physician's opinion on disability, even if
controverted, can be rejected only with specific and legitimate reasons supported
by substantial evidence in the record.")

The ALJ also noted that whether Plaintiff was "disabled" is a question
reserved to the Social Security Commissioner. (Doc. 8 at 22.) However, the ALJ
also discussed how Dr. Jenko made contradictory findings that Plaintiff was
"disabled for the foreseeable future" but also that it was "not clear what his long-
term disability status will be," other than that "it appeared he would never be able
to do the physical work for which he had been reasonably trained." (*Id.* at 22
(citing *id.* at 650.)  The ALJ went on to concluded that Dr. Jenko's opinion was
more "consistent with a sedentary exertional capacity, including limited range of
motion in the spine and 4/5 strength combined with normal motor function and
reflexes." (*Id.*)  The ALJ did not dismiss the entirety of Dr. Jenko's opinion but
found that Dr. Jenko's findings "support[ed] the claimant's sedentary residual
functional capacity," rather than a finding of total disability. (*Id.*)  Thus, the ALJ
properly considered Dr. Jenko's opinion and provided specific and legitimate

reasons, supported by substantial evidence, for rejecting Dr. Jenko's opinion that Plaintiff was disabled.

Next, Plaintiff argues that the ALJ erred by failing to "address Dr. Krass's statements that [P]laintiff had a 'chronic neurological disability' and that Plaintiff's "symptoms will significantly affect his quality of life." (Doc. 10 at 21 (quoting *id.* at 1150).)   The ALJ's failure to discuss Dr. Krass's opinion is harmless.   As discussed above, the ALJ is not bound by any statement on an issue reserved to the Commissioner, such as whether the claimant is "disabled." *See Mcleod*, 640 F.3d at 885.   Although it does not follow that an entire opinion may be discounted on the basis that it contains a statement on an issue ultimately reserved to the Commissioner; here, Dr. Krass's opinion does not address issues germane to a determination of Plaintiff's disability status outside of this conclusory statement. *See Marsh*, 792 F.3d 1170, 1172 (9th Cir. 2015) (rejecting "the idea that not mentioning a treating source's medical opinion precludes use of harmless error doctrine," although ultimately holding that the error was not harmless in that instance); *see also McLeod*, 640 F.3d at 888 (9th Cir. 2011) (explaining that "where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate").

Finally, Plaintiff argues that the ALJ improperly discounted Ms. Grover's opinion as a non-acceptable medical source and did not offer a sufficient evidentiary basis for "questioning the credibility of [his] reported symptoms where [Kimberly Grover] did not discredit those symptoms and the assessment is support with [Ms. Grover's] own observations." (Doc. 10 at 24–25 (citing *Ryan v. Commissioner Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014)).)

A physical therapist is not an acceptable medical source. 20 C.F.R. §§ 404.1502(a), 416.902(a). An ALJ may discount testimony from non-acceptable medical sources so long as the ALJ gives "germane reasons . . . for doing so." *Molina*, 674 F.3d at 1111 (citation omitted). Ms. Grover opined that:

> claimant had decreased activity tolerance on the lower extremity functional scale; the claimant had lumbago on the Oswestry low back pain assessment; the claimant showed decreased cervical range of motion; the claimant had decreased lumbar, hip, knee, and ankle active range of motion; the claimant had decreased shoulder strength; the claimant had decreased lower extremity strength; . . . the claimant had difficulty walking . . . ; [and] the claimant has a significant disability affecting his ability to obtain a full-time job.

(Doc. 8 at 22 (citing *id.* at 1126).) The ALJ ultimately gave Ms. Grover's opinion "little weight because this opinion was not drafted by an acceptable medical source, it purported to make a determination regarding the claimant's disability, and it was based on the subjective reports of the claimant instead of objective observations." (*Id.*)

15

The ALJ failed to provide germane reasons for discounting Ms. Grover's opinion.  First, the ALJ dismissed Ms. Grover's conclusion that Plaintiff was disabled because this issue is reserved to the Commissioner, but this does not provide a sufficient basis for excluding the entirety of Ms. Grover's opinion.  *See Neves v. Comm'r Soc. Sec. Admin.*, No. 1:15-cv-01194-EPG, 2017 WL 1079754, at *6 (E.D. Cal. Mar. 21, 2017) (explaining that "rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated").

Second, the ALJ provided no justification for the determination that Ms. Grover relied on Plaintiff's subjective reports rather than objective observations. *See Ghanim*, 763 F.3d at 1162 (finding reversible error where an ALJ "offered no basis for his conclusion that [medical] opinions were based more heavily on [a claimant's] self-reports, and substantial evidence [did] not support such a conclusion.").  Here, the letter from Ms. Grover discusses Plaintiff's self-reports, medical history, diagnoses, and her own personal observations.  (Doc. 8 at 1126.) Thus, the Court finds that the ALJ failed to provide germane reasons, supported by substantial evidence, for discounting Ms. Grover's opinion and this error was not harmless.

Accordingly,  the  Court  finds  that  the  ALJ  properly  assessed  and discounted the opinion of Plaintiff's medical source Dr. Jenko and the ALJ's

failure to address the opinion of Dr. Krass was harmless.  However, the ALJ

improperly discounted the opinion of Plaintiff's physical therapist Kimberly

Grover.

### III.   The ALJ failed to issue a sufficient finding regarding Plaintiff's RFC.

Plaintiff argues that the ALJ issued an insufficient finding regarding

Plaintiff's RFC because the ALJ "fail[ed] to include all physical and mental

limitations supported by the record into the RFC finding."  (Doc. 10 at 25–26.)

Specifically, Plaintiff contends that the ALJ "erred in finding that the medical

record does not establish that plaintiff had disability impairments for the minimum

12-month durational threshold and improperly relied on the opinions of the state-

agency non-examining doctor's opinions as a basis for this finding."  (*Id.* at 26.)

Plaintiff further argues that the ALJ "fail[ed] to accurately encompass limitations

supported by the medical and testimonial evidence addressed in [the above

arguments]," including Plaintiff's "fatigue, weakness, pain, likely absenteeism

from work, and restrictions with neck positioning and motion."  (*Id.*)

In formulating an RFC, the ALJ "must consider limitations and restrictions

imposed by all of an individual's impairments, even those that are not severe."

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotation marks

and citation omitted).  "[T]he possibility drawing two inconsistent conclusions

form the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1996).

Here, the ALJ did formulate an RFC after "consider[ing] all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Doc. 8 at 20.) The ALJ ultimately concluded that "degenerative disc disease, cervical ankylosis and kyphosis, and obesity support limitations in [Plaintiff's RFC]," but "found his other alleged limitations were unsupported by the available evidence." (*Id.* at 24.)

Furthermore, in reaching an RFC determination, an ALJ may also rely on the opinion of a non-examining physician, so long as that opinion is supported by evidence in the record. *See Lester*, 81 F.3d at 831; *see also Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989) (explaining that the ALJ may rely on a non-examining physician's testimony to reject the opinions of a claimant's treating physicians if supported by evidence in the record).

Here, the ALJ considered the opinions of non-examining physicians Arvind Chopra, M.D., and William Fernadez, M.D. (Doc. 8 at 23.) In July 2017, Dr. Chopra opined:

> the claimant could lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently. The claimant could stand or walk for hours in an 8-hour workday and sit about 6 hours. The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The [claimant] could frequent[ly] balance, stoop, kneel, and

crouch, but the claimant could only occasionally crawl.  The claimant could frequently reach overhead with the bilateral upper extremities.

(*Id.* (citing *id.* at 121–30).)  Later, in May 2018, Dr. Fernandez opined:

> the claimant could lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently.  The claimant could stand or walk 3 hours in an 8-hour workday and sit about 6 hours.  The claimant could frequently push and pull with the bilateral upper extremities.  The claimant needed to alternate sitting and standing/walking as needed for back pain and allowed by normal breaks.  The claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds.  The claimant could frequently kneel and crouch, but only occasionally balance, stoop, and crawl.  The claimant could reach rarely reach overhead with the bilateral upper extremities.  The claimant could frequently handle and finger with the bilateral upper extremities.  The claimant could frequently feel with the right upper extremity. . . . and the claimant needed to avoid concentrated exposure to extreme cold and vibration, as well as even moderate exposure to hazards, including wet or slippery surfaces, uneven ground, unprotected heights, and dangerous machinery.

(*Id.* (citing *id.* at 132–44).)

The ALJ determined that these opinions were "supported by the medical record and consistent with [Plaintiff's] recovery," although the ALJ determined that Dr. Chopra's opinion should be given greater weight because his "opinion is supported by the claimant's consultative examination, in which Dr. Jenko found the claimant had limited and painful range of motion in the spine, with hypoesthesia in the feet, and 4/5 strength in the upper extremities, but no motor deficits in the lower extremities and full range of motion in all the extremities." (*Id.*)  The ALJ also noted that Dr. Chopra specializes in neurology, "suggesting he

19

has a greater insight with regard to the neurological effect of the claimant's impairments." (*Id.*)  Thus, the ALJ's reliance on the opinions of these non-examining physicians was proper.

However, as discussed above, the Court finds that the ALJ improperly discounted the opinion of Plaintiff's physical therapist Kimberly Grover. Accordingly, the Court finds that the ALJ's determination of the RFC is flawed insofar as it is based on an erroneous determination of Plaintiff's limitations. Accordingly, the Court finds that the ALJ failed to issue a sufficient finding on Plaintiff's RFC.

## CONCLUSION

IT IS ORDERED that the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

DATED this 11th day of April, 2023.

Dana L. Christensen, District Judge
United States District Court